FILED
United States Court of Appeals
Tenth Circuit

August 13, 2015

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

DONALD BOUCHER,

     Petitioner - Appellant,

v.

WYOMING DEPARTMENT OF
CORRECTIONS MEDIUM
CORRECTIONAL INSTITUTION
WARDEN, a/k/a Steve Hargett, in his
official capacity; WYOMING
DEPARTMENT OF CORRECTIONS
DIRECTOR, a/k/a Bob Lampert, in his
official capacity,

     Respondents - Appellees.

No. 15-8023
(D.C. No. 2:13-CV-00276-SWS)
(D. Wyo.)

_____

**ORDER DENYING CERTIFICATE OF APPEALABILITY** [*]
_____

Before **KELLY**, **LUCERO**, and **McHUGH**, Circuit Judges.
_____

Donald Boucher seeks a certificate of appealability ("COA") to appeal the

district court's denial of his 28 U.S.C. § 2254 petition. We deny a COA and dismiss

the appeal.

**I**

On February 15, 2001, Boucher was charged by information in Laramie

---

[*] This order is not binding precedent, except under the doctrines of law of the
case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

County, Wyoming, with ten counts of second degree sexual assault. A warrant for his arrest was issued the same day. Boucher was arrested in Arizona seven years later, on March 1, 2008. He was arraigned in April 2008. Boucher's trial was scheduled for September 2008. However, after learning that some of the dates contained in the original information were incorrect, the prosecution elected to dismiss the charges and re-file. A second information charged Boucher with five counts of second degree sexual assault and one count of third degree sexual assault.

In January 2009, Boucher's trial counsel moved to dismiss the charges, alleging a violation of Boucher's right to a speedy trial under Wyoming Rule of Criminal Procedure 48. At a subsequent hearing on the motion, counsel asserted that the delay between Boucher's arraignment and trial violated his rights under both Rule 48 and the federal Constitution. Although the prosecutor noted the substantial delay between the filing of original charges in 2001 and Boucher's arrest in 2008, defense counsel did not argue that Boucher's speedy trial rights were violated by pre-arrest delay. The trial court denied Boucher's motion. He was convicted on all six counts.

On direct appeal, Boucher was represented by new counsel, who abandoned his Rule 48 argument and instead claimed that pre-arrest delay violated Boucher's constitutional right to a speedy trial. The Wyoming Supreme Court rejected this argument. It concluded that de novo review was proper despite Boucher's failure to argue pre-arrest delay before the trial court, and identified the four-factor test from Barker v. Wingo, 407 U.S. 514 (1972), as governing its analysis. The court concluded that the 2,971-day delay from when Boucher was initially charged in 2001

until his April 2009 trial qualified as presumptively prejudicial. Accordingly, the court reached the other Barker factors and concluded that Boucher had asserted his speedy trial rights as to post-arrest delay, that his failure to properly raise and create a record about pre-arrest delay hampered the court's analysis of the reason for delay, and that Boucher did not point to any specific prejudice flowing from the delay. Considering these factors together, the court concluded that Boucher's rights were not violated.

Boucher then filed a petition for state post-conviction relief. He argued that his trial counsel was ineffective for failing to create an adequate record as to pre-arrest delay. Boucher also argued that his appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness. Therefore, he argued, his claim that his trial counsel was ineffective should not be procedurally barred, even though Boucher did not raise the issue on direct appeal. In its response to Boucher's petition, the state submitted an affidavit from Detective Richard Zukauckas stating that Boucher's arrest warrant was entered into the National Crime Information Center database in February 2001, which indicated that Laramie County sought to extradite Boucher if he was found anywhere in the United States. Zukauckas also averred that he entered Boucher's information into "multiple databases," and would have been alerted if "Boucher had been arrested, received a traffic citation, applied for public assistance, obtained a driver's license, registered a motor vehicle, rented a home, had utilities turned on, applied for credit, or obtained a cell phone, using his real name, Social Security number, and date of birth."

The trial court dismissed Boucher's petition. It concluded that because the Wyoming Supreme Court had already considered the issue of pre-arrest delay on direct appeal, Boucher's ineffective assistance claim was an "impermissible end-run around" that ruling. The court dismissed for lack of jurisdiction, holding the claim was procedurally barred because it had previously been decided on the merits. It also stated that if it had jurisdiction to consider the claim, it would deny relief because the Zukauckas affidavit showed that pre-arrest delay was attributable to Boucher rather than the state. The Wyoming Supreme Court denied Boucher's petition for writ of review, finding "no error in the district court's Order."

Boucher then filed a § 2254 petition in federal court advancing three claims: (1) the Wyoming Supreme Court unreasonably denied his constitutional speedy trial claim on direct appeal; (2) trial counsel was ineffective for failing to argue pre-arrest delay; and (3) appellate counsel was ineffective for failing to raise ineffective assistance of trial counsel. On cross motions for summary judgment, the district court denied relief and declined to grant a COA. Boucher filed a timely notice of appeal.

## II

A petitioner may not appeal the denial of habeas relief under § 2254 without a COA. § 2253(c)(1). We will issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." § 2253(c)(2). To make such a showing, Boucher must demonstrate "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a

-4-

different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quotations omitted).

To obtain relief under § 2254 on a claim adjudicated on the merits, a petitioner must show that the state court's decision either "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented" or was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1), (2). In other words, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011).

## A

Boucher first contends that the Wyoming Supreme Court unreasonably adjudicated his constitutional speedy trial claim. The state court correctly identified the four factors that must be weighed in assessing a speedy trial claim: (1) the length of the delay; (2) the reason for the delay; (3) defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant. Barker, 407 U.S. at 530-32. As Boucher recognizes, the state court properly held that the delay in this case was sufficient to qualify as "presumptively prejudicial" such that analysis of the

remaining factors is required.  Id. at 530.  Boucher argues that the state court unreasonably applied these latter three factors.  We disagree.

Boucher complains that the state court failed to weigh in his favor the silent record as to the reasons for delay, noting that the government bears the burden of establishing an acceptable rationale for excessive delay.  See United States v. Seltzer, 595 F.3d 1170, 1177 (10th Cir. 2010).  But this argument ignores the procedural posture of his direct appeal.  Because Boucher did not challenge the government on pre-arrest delay at trial, the state had no reason to create a record.  The Wyoming Supreme Court recognized that the case presented a "unique situation" and elected to treat this factor as neutral.  Given the absence of on-point case law—Boucher does not cite any cases presenting a similar scenario—we cannot say that the court's decision was unreasonable.  See Parker v. Scott, 394 F.3d 1302, 1308 (10th Cir. 2005) (explaining that a § 2254 petitioner must show that the state court contravened or unreasonably applied "clearly established federal law as determined by decisions, not dicta, of the Supreme Court" (quotation omitted)).

The state court held that the third factor, whether the defendant asserted his right to a speedy trial, only slightly favored Boucher because he asserted his right only as to post-arrest delay.  Boucher contends that because the prosecutor mentioned the pre-arrest period, the trial court was on notice that the full period of delay was at issue.  But our review of the record confirms the state court's conclusion that Boucher did not argue pre-arrest delay in the trial court.  Given this partial assertion of the right to a speedy trial, a "slight" weighting in Boucher's favor is reasonable.

Boucher also argues that he was substantially prejudiced by the delay. We reject his contention that specific claims of prejudice are irrelevant because the length of the delay was presumptively prejudicial. Although it is true that "affirmative proof of particularized prejudice is not essential to every speedy trial claim," the phrase "presumptive prejudice" is something of a misnomer: it is not "intended to indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger the Barker enquiry." Doggett v. United States, 505 U.S. 647, 652 n.1, 655 (1992).

The Wyoming Supreme Court looked to the three interests that may be prejudiced identified in Barker: "oppressive pretrial incarceration," "anxiety and concern of the accused," and "the possibility that the defense will be impaired." 407 U.S. at 532. It noted that Boucher was not incarcerated prior to arrest and did not claim any unusual level of anxiety. Boucher does not argue that any witnesses became unavailable as a result of the delay. See id. (noting that in such circumstances, "prejudice is obvious"). He does argue that he suffered prejudice because the memories of the prosecution's witnesses faded, but as the state court explained, the witnesses' difficulties in remembering certain details may well have helped Boucher by undermining the credibility of his accusers. Again, we do not discern anything unreasonable about the state court's handling of this factor.

Finally, Boucher argues that the Wyoming Supreme Court's weighing of the factors was unreasonable because more factors favored him than favored the state. But in Barker itself the Court explained that "none of the four factors identified

above [is] either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant." Id. at 533. Boucher further claims that his case is materially identical to Doggett, and thus required a finding of a speedy trial violation. But in Doggett, the government made little effort to search for the defendant, and "could have found him within minutes" using basic investigatory techniques. 505 U.S. at 653. The government's negligence was thus a key factor. See id. In the case at bar, the record was silent as to the government's diligence because Boucher did not raise pre-arrest delay as an issue.[1] This salient distinction explains the Wyoming Supreme Court's disposition.

Because reasonable jurists could not debate whether the Wyoming Supreme Court's decision was an unreasonable application of clearly established federal law, Boucher is not entitled to a COA on his speedy trial claim.

**B**

Boucher also argues that his trial counsel and appellate counsel were ineffective. Although Boucher raised these claims in his petition for state post-conviction relief, the state trial court concluded they were procedurally barred because they had already been decided on direct appeal. The Wyoming Supreme Court found "no error" in the trial court's ruling.

---

[1] Because the Zukauckas affidavit was not submitted until after the Wyoming Supreme Court rendered its decision on direct appeal, we do not consider it in ruling on Boucher's speedy trial claim. See Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011).

As a general matter, "[a] state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed." Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012). Boucher suggests that the state courts subjected his ineffective assistance claim to a rule that is not firmly established or consistently followed. We agree that the state courts' analysis was highly unusual: a claim that counsel was ineffective for failing to properly present a speedy trial argument plainly differs from a substantive speedy trial claim. See Schreibvogel v. State, 269 P.3d 1098, 1102 (Wyo. 2012) (explaining the difference between "claims" and "issues" under Wyoming law).[2] However, we need not consider whether this procedural bar is adequate and independent because "[w]hen a state court declines to review the merits of a petitioner's claim on the ground that it has done so already, it creates no bar to federal habeas review." Cone v. Bell, 556 U.S. 449, 466 (2009).

The trial court stated that it would deny Boucher's ineffective assistance claim on the merits if it possessed jurisdiction. However, the trial court concluded that it lacked jurisdiction, and the Wyoming Supreme Court found no error in its ruling. Whether a conditional statement regarding the manner in which a state court would

---

[2] In Schreibvogel, the Wyoming Supreme Court held that a petitioner was barred from seeking post-conviction relief for ineffective assistance of counsel because he had also raised a claim of ineffective assistance of counsel on direct appeal. Id. at 1102. By contrast, although Boucher's ineffective assistance of counsel claim involved the same issue, speedy trial rights, as a claim he raised on direct appeal, he did not raise a claim of ineffective assistance of counsel on direct appeal.

rule if it had jurisdiction qualifies as an alternative merits adjudication is not entirely clear. See generally Johnson v. McKune, 288 F.3d 1187, 1191-92 (10th Cir. 2002) (explaining that a state court's alternative merits ruling requires deference). Rather than delve into this issue, we will simply apply de novo review to Boucher's ineffective assistance claim because we conclude it fails even under the more lenient standard. See id. (applying de novo review instead of determining whether ambiguous state court rulings required deference because claim failed regardless of standard); see also Cannon v. Mullin, 383 F.3d 1152, 1159 (10th Cir. 2004) ("[A] federal court may exercise its discretion to bypass the procedural issues and reject a habeas claim on the merits.").

A petitioner claiming ineffective assistance of counsel must establish "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland v. Washington, 466 U.S. 668, 687 (1984). "Strategic or tactical decisions on the part of counsel are presumed correct, unless they were completely unreasonable, not merely wrong, so that they bear no relationship to a possible defense strategy." Moore v. Marr, 254 F.3d 1235, 1239 (10th Cir. 2001) (quotation and alteration omitted). The petitioner must also show that "the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687. To establish prejudice, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

Boucher argues that counsel should have argued that pre-arrest delay violated his right to a speedy trial and should have made a record of the reasons for that delay. However, he provides no reason to think that the hypothetical record counsel could have created would have been favorable. Everything in the record before us indicates that Boucher himself was responsible for the pre-arrest delay. The prosecutor stated, without objection from defense counsel, that Boucher had "been on the lam for nine years, and so we've been unable to have the defendant here in a timely manner. So a lot of this is really not the fault of the State." Boucher fled from law enforcement when he was finally apprehended, suggesting he was aware of serious charges against him. And the Zukauckas affidavit shows that Boucher avoided a wide range of ordinary activities, or engaged in those activities without using his real name and identifying information, prior to his arrest. Boucher challenges the level of detail in the affidavit, but fails to come forward with any evidence, or even particularized allegations, suggesting the state was negligent in searching for him.

In essence, Boucher asks us to presume a positive record could have been created, and to judge counsel's omission of pre-trial delay from her speedy trial arguments in light of that hypothetical positive record. But in assessing an ineffective assistance of counsel claim, "we presume that an attorney performed in an objectively reasonable manner because his conduct <u>might</u> be considered part of a sound strategy." <u>Bullock v. Carver</u>, 297 F.3d 1036, 1051 (10th Cir. 2002). "Unlike a later reviewing court, the attorney observed the relevant proceedings [and] knew of materials outside the record." <u>Harrington</u>, 562 U.S. at 105. Absent some particular

basis to conclude otherwise, we must presume that trial counsel made a tactical decision to avoid creating a record on the reason for pre-arrest delay, and that counsel declined to argue that pre-arrest delay violated Boucher's rights. Because Boucher has not provided any basis to rebut this presumption, his ineffective assistance of trial counsel claim fails. See Snow v. Sirmons, 474 F.3d 693, 730 n.42 (10th Cir. 2007) (court cannot conclude that trial counsel was ineffective for failing to call a witness because the petitioner did not show that the witness' testimony would have been favorable); United States v. Snyder, 787 F.2d 1429, 1432 (10th Cir. 1986) (courts will not speculate that evidence counsel omitted would be positive when it is equally likely the evidence would have been harmful).

Because we conclude that Boucher's ineffective assistance of trial counsel claim lacks merit, we also conclude that appellate counsel was not deficient for failing to raise this claim. See Cargle v. Mullin, 317 F.3d 1196, 1202 (10th Cir. 2003) ("[I]f the issue is meritless, its omission will not constitute deficient performance."). Boucher also contends that his appellate counsel was ineffective for failing to request a hearing to develop facts as to trial counsel's ineffectiveness. See Calene v. State, 846 P.2d 679, 692 (Wyo. 1993) (under Wyoming law, appellate counsel generally must request a hearing to develop a record to raise ineffective assistance of trial counsel on direct appeal). But Boucher again fails to provide any indication that such a hearing would have produced favorable evidence. This failure is fatal to his claim. See Snyder, 787 F.2d at 1432.

Although the procedural aspects of Boucher's ineffective assistance claim are debatable, the merits are not. Accordingly, he is not entitled to a COA. See Slack, 529 U.S. at 478 (if a "district court denies a habeas petition on procedural grounds," petitioner must show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling").

### III

For the foregoing reasons, we **DENY** a COA and **DISMISS** the appeal.

Entered for the Court

Carlos F. Lucero
Circuit Judge